In re SENIOR LIVING PROPERTIES, LLC, et al., Debtors.

Centre Strategic Investments Holdings Limited and ZC Specialty Insurance Company, Plaintiffs,

v.

The Official Committee of Unsecured Creditors of SLP, L.L.C., Senior Living Properties, Inc., and SLP Illinois, L.L.C., Defendant.

Bankruptcy No. 02–34243–SAF–11. Adversary No. 03–3262.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

June 24, 2003.

Mark K. Thomas, Jenner & Block, Chicago, IL, for plaintiffs.

Marvin Isgur, Floyd, Isgur, Rios and Wahrlich, Houston, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

The Official Committee of Unsecured Creditors of Senior Living Properties, LLC, the defendant, moves to dismiss this adversary proceeding. Centre Strategic Investments Holdings Limited and ZC Specialty Insurance Company ("Centre"), the plaintiff, opposes the motion. The court conducted a hearing on the motion on June 10, 2003.

In this declaratory judgment adversary proceeding, Centre seeks a declaration that it has no liability to the Senior Living

bankruptcy estate based on alter ego claims held or owned by the bankruptcy estate. In the alternative, Centre seeks a declaration that if Centre is liable on an alter ego claim, Centre would be entitled to setoff its claims against the bankruptcy estate. The Committee contends that the court should abstain from adjudicating this complaint. The Committee requests that the court implement its abstention by dismissing the complaint.

■ The parties agree that the court has jurisdiction over this declaratory judgment action. Centre seeks a declaration concerning claims owned by the bankruptcy estate. Resolution of Centre liability on those claims will have a conceivable effect on the bankruptcy estate. 28 U.S.C. § 1334(b); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir.1987). This court may enter a declaratory judgment. 28 U.S.C. § 2201.

■ But the Committee asserts that mandatory abstention applies. Section 1334(c)(2) of Title 28 provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

The Committee asserts that Centre is liable to the creditors of the bankruptcy estate of Senior Living Properties as a *de facto* general partner with Senior Living Properties in a *de facto* partnership that operated the Senior Living nursing homes.

The parties refer to this claim as an "alter ego" claim. The claim derives from state law. The parties agree that the Committee's claim is owned by the Senior Living Properties' bankruptcy estate. Senior Living Properties held the alter ego claim against Centre prior to the filing of the bankruptcy case. Accordingly, Senior Living Properties could have commenced litigation on the claim in state court.

■ The Committee argues, as a result, that this declaratory judgment adversary proceeding does not "arise in" or "arise under" the bankruptcy case. "Arising under title 11" means "those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *Wood*, 825 F.2d at 96. "Arising in a case under title 11" means "proceedings that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy." *Id.* at 97. The alter ego claim is not a claim created or determined by a provision of the Bankruptcy Code. On its surface, the alter ego claim would have an existence outside of bankruptcy.

■ The Fifth Circuit instructs that a state law cause of action that could exist outside of bankruptcy may be so inseparable from the bankruptcy case to give the court discretion whether to abstain from hearing the cause. *Southmark Corp. v. Coopers & Lybrand (In re Southmark)*, 163 F.3d 925, 931 (5th Cir.1999). In that case, Southmark brought a malpractice suit in state court against Coopers & Lybrand, accountants for the court-appointed examiner in the *Southmark* bankruptcy case. Coopers removed the litigation to federal court. Southmark moved to remand, based on mandatory abstention under § 1334(c)(2). The malpractice claim was based on state law. A malpractice suit against accountants exists outside of bankruptcy.

Nevertheless, the Fifth Circuit reasoned that the professional malpractice claims alleged against Coopers were inseparable from the bankruptcy context. The bankruptcy court appointed the examiner. The court authorized the examiner to employ Coopers as his accountants. The examiner performed a vital function in the administration of the Southmark bankruptcy case. The court authorized the compensation of Coopers by the bankruptcy estate pursuant to the Bankruptcy Code. Southmark complained about the performance of the accountants.

■ The Fifth Circuit held that the nature of the services performed by the accountants could not be separated from the bankruptcy court's superintendence of the award of fees. As a result, the Court concluded that the claim against the accountants amounted to a core proceeding in the bankruptcy case. Mandatory abstention did not apply; rather the bankruptcy court had discretion to abstain from hearing the claim. 163 F.3d at 932. Although the Court did not expressly state that the claim fit the "arising in" the bankruptcy case jurisdictional standard; the Court implicitly reached the conclusion by holding that the bankruptcy court had discretion to abstain. *Southmark*, therefore, stands for the proposition that a claim not based on any right created by the Bankruptcy Code can nevertheless be inseparable from a bankruptcy court to be considering "arising in" the case.

The Committee's alter ego claim against Centre fits the *Southmark* scenario. The *de facto* partnership claim is based on non-bankruptcy law. The claim is not based on any right created by the Bankruptcy Code. But the claim is inseparable from the Senior Living Properties' bankruptcy case. Indeed, the prospect of recovery on the claim has been a continual theme in the underlying bankruptcy case.

The entire posture of the litigation of the alter ego claim by the Committee is intertwined with the bankruptcy case. The Committee is an entity created by the Bankruptcy Code. 11 U.S.C. § 1102(a)(1). The alter ego claim constitutes property of the bankruptcy estate. 11 U.S.C. § 541(a). By order entered September 4, 2002, the bankruptcy court directed that the alter ego claims owned by the bankruptcy estate would be prosecuted by the Committee. The court transferred the estate's alter ego claims to the Committee along with the sole and exclusive authority to investigate, mediate, prosecute and settle the claims. By order entered June 25, 2002, the bankruptcy court recognized that as part of post-petition financing for Senior Living Properties, any alter ego claim or cause of action would be presented in the bankruptcy court. The bankruptcy court directed the Committee and Centre to attempt to mediate the alter ego dispute. The court further directed that the Committee defer commencing litigation against Centre until the conclusion of mediation. Although unsuccessful, the parties engaged in mediation from March 4 to March 12, 2003.

On October 30, 2002, Centre filed in the bankruptcy case a combined proof of claim for $134 million. In its state court suit filed on March 12, 2003, the Committee seeks a declaration that Centre is the *de facto* general partner of Senior Living Properties, having formed a *de facto* partnership to operate the nursing homes. The Committee contends that it seeks relief against Centre as a partner, not as a creditor. The Committee argues that it does not object to Centre's proof of claim based on its alleged partnership status. However, the Committee has no interest in a mere declaration finding a partnership. The Committee desires to catapult a partnership declaration into a judgment re-

quiring Centre to pay the Senior Living Properties' debts. If the Committee establishes a *de facto* partnership, the Committee in subsequent litigation would attempt to hold Centre liable as general partner for the Senior Living Properties' debts. To successfully obtain a positive recovery from Centre, the Committee must address the Centre claim against the estate. The Centre claim may either be subject to offset or disallowance. In other words, to obtain a money judgment against Centre, the Committee's litigation strategy would require the court to disallow or offset Centre's claim, leaving Centre obligated to pay the remaining claims against the estate. Consequently, focusing on the substance of the Committee's claim, the Committee is presenting a counter-claim to Centre's claim. *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 741 (5th Cir.1993). Centre's claim and the Committee's *de facto* partnership claim arise from the same underlying facts regarding the operation of the nursing homes. As a counter-claim to Centre's claim, the *de facto* partnership claim presents a core matter. 28 U.S.C. § 157(b)(2)(C). Indeed, to protect its position, the Committee has filed an objection to Centre's proof of claim. This is an adjustment of the debtor-creditor relationship.

Although unlikely, in the event that Senior Living Properties fails to confirm a Chapter 11 plan of reorganization, the case could be converted to a case under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1112(b). In that event, a Chapter 7 trustee could pursue the *de facto* partnership claim against Centre under 11 U.S.C. § 723.

Accordingly, the court · concludes that the *de facto* partnership alter ego claim arises in the Senior Living Properties' bankruptcy case, as the claim is insepara-

ble from the case. Under the *Southmark* holding, the court has discretion to abstain from hearing Centre's declaratory judgment action. Mandatory abstention does not apply.

For purposes of completeness, the court does find that the Committee's state court action had been commenced before Centre's adversary processing, albeit by only two days. The state court is a forum of appropriate jurisdiction for the Committee's declaratory judgment action. This court has no reason to believe that the state court could not timely adjudicate the complaint. Centre contends that there is diversity jurisdiction over its declaratory judgment action, but the parties did not pursue that jurisdictional basis at the hearing and the court does not opine on diversity jurisdiction involving a creditors committee as a party.

■ The court turns to the exercise of its discretion. The following considerations weigh in favor of the court declining to abstain. The alter ego claims are inextricably involved with the bankruptcy case. In the underlying case, the court has heard parties in interest present the alter ego dispute at each stage of the administration of the case. Resolution of the dispute will facilitate the ultimate resolution of the bankruptcy case. Centre's claim will be resolved in the bankruptcy case. The Committee's *de facto* partnership alter ego counter-claim should be resolved in the same forum. The claims allowance process as affected by the counter-claim constitutes a core matter, which should be resolved in the administration of the bankruptcy case. The parties should not face piecemeal litigation in federal and state court. Contrary to the Committee's arguments, the court does not view litigating the alter ego claim in the instant adversary proceeding as compromising the Committee's exclusive right to prosecute the claim

on behalf of the bankruptcy estate. Having the right to litigate the claim on behalf of the bankruptcy estate does not correlate into a right to do so in a particular forum. Consistent with due process, both parties to the dispute have a right to be heard on the forum issue. Dating from the entry of the debtor in possession financing order on June 25, 2002, the court anticipated that the alter ego claim would be adjudicated, if not settled, in the bankruptcy court. The state court litigation had been commenced a mere two days before the instant adversary proceeding had been filed. The alter ego claim presents an actual controversy. 28 U.S.C. § 2201. If the Committee ultimately prevails, Centre will fund in part a Chapter 11 plan or will eliminate claims against the bankruptcy estate.

The Committee argues that the financing order merely preserved claims, and that, having been preserved, the court should honor the Committee's choice of forum. The Committee also contends that it has a right to a jury trial. The factors for declining to abstain outweigh the Committee's choice of forum. The jury trial must yield to the bankruptcy process, for the reasons concerning the claims allowance process.

Based on this consideration of the competing factors, the court declines to abstain from deciding the instant adversary proceeding. The court will therefore deny the motion to dismiss.

Based on the foregoing,

**IT IS ORDERED** that the motion to dismiss is **DENIED.**